IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BETTY J. B. O/B/O L.J.B.,

       Plaintiff,

  v.                                       Civil Action No.
                                                  6:21-CV-0125 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP             CHELSEA WILLIAMS RENGEL, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.         AMY BLAND, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on October 31, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

     3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    November 3, 2022
              Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BETTY JEAN B. o/b/o L.J.B.,

                        Plaintiff,

vs.                                               6:21-CV-125

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------------------------x
```

*TRANSCRIPT OF DECISION*

held on October 31, 2022 by teleconference

the HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding


APPEARANCES (by telephone)

```
For Plaintiff:     OLINSKY LAW GROUP
                   250 South Clinton Street
                   Syracuse, NY 13202
                     BY:  CHELSEA WILLIAMS RENGEL, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   Office of Regional General Counsel
                   6401 Security Blvd.
                   Baltimore, MD 21235
                     BY:  AMY BLAND, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

THE COURT:  Let me begin by thanking counsel for excellent presentations.  This is an interesting, albeit fairly narrow, issue that has been raised.

This is a childhood disability case.  It was commenced by the plaintiff on behalf of her grandson L.J.B.  It is brought under 42, United States Code, Sections 405(g) and 1383(c)(3) to challenge a finding by the Acting Commissioner of Social Security that the claimant -- I will refer to L.J.B. as the claimant -- was not disabled at the relevant times and therefore ineligible for the benefits sought.  The background is as follows.

The claimant was born in May of 2007.  He is currently 15 years of age.  At the time of the application on September 15, 2015 he was defined under the regulations as school age.  Currently he is now defined as an adolescent.

The claimant lives with his grandmother, his great-grandmother, and an autistic brother in Utica, New York.  Apparently his father is around but not significantly involved in the claimant's life.  The status of the claimant's mother is not clear from the record.

The claimant attends Utica Public Schools.  He is in special education.  He is classified as learning disabled.  Although he has been in regular classes since fourth grade, he has received the assistance, additional assistance of tutors, extra test times and so forth based upon his

disability. The claimant passed grades five, six and seven. He clearly does have some comprehension issues. He is, however, no longer in speech and language therapy.

Physically, the claimant suffers from allergies and asthma and has some sleep issues which are being addressed through counseling.

Mentally, claimant suffers from speech and language impairments, a learning disorder. There is indications, although I'm not sure I saw a diagnosis, of attention deficit and hyperactivity disorder, or ADHD. Claimant has never been psychiatrically hospitalized. Claimant does not take any medications with the exception of an EpiPen for his asthma.

Claimant has been described as quiet, a loner. He does go to church. He plays on the school football team. He does have some hygiene issues associated with his toileting and inability to properly clean himself after using the toilet. He was described as a late bloomer when it comes to toilet training and verbalization and walking. He did receive services in a preschool setting. And claimant plays the violin in the school band.

Procedurally, claimant filed for Title XVI Supplemental Security Income payments on November 9, 2015. He alleged an onset date of October 1, 2014, and claims disability based upon a learning disability and ADHD. That's at page 63 of the Administrative Transcript.

A hearing was conducted on March 5, 2018 by Administrative Law Judge Jeremy Eldred, who subsequently issued an unfavorable decision on April 10, 2018.  That decision was overturned by the Social Security Administration Appeals Council, however, on December 23, 2019, based upon the Appointments Clause issue that has permeated some of the past cases from the Agency, and the matter was remanded to a different Administrative Law Judge.

A hearing was conducted by Administrative Law Judge John Ramos on August 11, 2020.  ALJ Ramos issued a second unfavorable decision on August 26, 2020.  The Social Security Appeals Council denied review on December 2, 2020, making the Administrative Law Judge's decision a final determination of the Agency.  This action was commenced on February 3, 2021, and is timely.

In his decision ALJ Ramos applied the familiar three-step test for determining disability in a childhood disability case.

At step one, he concluded that claimant had not engaged in substantial gainful activity during the relevant time period.

At step two, he concluded that claimant suffers from speech and language impairment, a learning disorder, and asthma, and that those constitute severe impairments imposing more than minimal limitations on his ability to perform basic

functions.

At step three, the Administrative Law Judge examined the listings to determine whether the claimant is presumptively disabled under the listings, and specifically examined listings 103.03 for asthma and 112.11 for neurodevelopmental disorders. After concluding that the listings were not met, and specifically the B criteria of 112.11, the Administrative Law Judge then turned to the functional equivalence examination and determined that claimant had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being, and found no limitations in moving about and manipulating objects and caring for self, and therefore concluded that there was no functional equivalence and that claimant was therefore not disabled.

As you know, the Court's function in this case is to determine whether correct legal principles were applied and whether the resulting determination is supported by substantial evidence, which is defined as such relevant evidence as a reasonable mind would find sufficient to support a conclusion.

The Second Circuit has noted, including in *Brault versus Social Security Administration Commissioner*, 683 F.3d 443, from 2012, that this is an extremely deferential

standard.  Under the standard once an ALJ finds a fact, that fact can be rejected only if a reasonable fact-finder would have to conclude otherwise.  The Second Circuit recently reaffirmed the *Brault* standard in *Schillo v. Kijakazi*, 31 F.4th 64, from April 6, 2022.

　　　　The claimant in this case -- or, the plaintiff I should say, raises a singular argument, noting that the Administrative Law Judge credited a questionnaire from the claimant's fifth grade teacher, Linda DeLuke, dated January 8, 2018, but failed to include and find that the claimant suffered a marked limitation in the domains of acquiring and using information and caring for self, and therefore erred in not finding functional equivalence.

　　　　Under the revised regulations that were the result of enactment in 1996 of the Personal Responsibility and Work Opportunity Reconciliation Act, there is now a prescribed three-step evaluation process for determining whether a child can meet the statutory definition of disability, 20 CFR Section 416.924.

　　　　Under that protocol, the first step, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity.  If so, of course, then the analysis ends.  If the claimant has not engaged in substantial gainful activity,

then the test next requires examination of whether the child suffers from one or more medically determinable impairments that either singly or in combination are properly regarded as severe, in that they cause more than a minimal functional limitation.  If the existence of a severe impairment is discerned, the Agency must then determine whether it meets or equals a presumptively disabling condition identified in the so-called listings.

Equivalence for purposes of this analysis can be either medical or functional.  Under the regulations which became effective on January 2, 2001, the analysis of functionality is informed by consideration of how a claimant functions in six main areas which are denominated as domains. They're broad areas of function and intended to capture all of what a child can or cannot do, and include the following: Acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being.

Functional equivalence is established in the event of a finding of an extreme limitation, meaning more than marked in a single domain.  An extreme limitation is an impairment which interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.  Alternatively, a finding of disability

is warranted if a marked limitation is found in any two of the listed domains.  A marked limitation being defined as one that interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities.

In this case the focus of plaintiff's argument is on the two domains of acquiring and using information and caring for oneself.  And the focus primarily is upon the questionnaire from the claimant's fifth grade teacher, Linda DeLuke.  It was dated January 8, 2018, and it appears at pages 334 through 340.  In it the teacher found a serious problem in one of ten sub-domains in acquiring and using information, that being in reading and comprehending written material, and found obvious problems in some of the other areas of that domain.

The teacher also found a serious problem in taking care of personal hygiene, one of ten sub-domains in the domain of caring for himself or herself, that being taking care of personal hygiene, and found no other obvious problems but several slight problems, or in some cases no problems in the various other sub-domains.  In the note section the teacher stated the following, "Claimant often smells and seems to not be able to clean himself appropriately after using the bathroom."

ALJ Ramos lumped the teachers' questionnaires together.  There are questionnaires from other teachers,

including the seventh grade teacher, Alexis Holmer, from August 7, 2020, together at page 18 and stated that those questionnaires were given significant weight since they are educational professionals who had the opportunity to interact with the claimant on a regular basis in a school setting. The ALJ noted that, "Their finding that the claimant has minimal, at most, functional limitations is generally consistent with the claimant's education and medical records, including his test scores, report cards, and presentation during school and medical appointments."

  In this case the opinion evidence is subject to the old regulations -- I'll call them the old regulations -- that were in effect until March of 2017.  Obviously, the teachers are not acceptable medical sources, their opinions are not entitled to controlling weight, although they are clearly valuable sources of information in a childhood case and should be considered.

  The teachers', and specifically fifth grade teacher DeLuke, opinions are very modest finding only serious limitations, which the term serious not being defined in the questionnaire, in only one of ten subareas in both acquiring and using information and caring for oneself.  I note that the seventh grade teacher, for example, found one serious limitation in the area of acquiring and using information, but it's a different subarea, it is not in reading and

comprehending written material as Ms. DeLuke's was. Instead, it is in applying problem-solving skills in class discussions, noting in the note section that the claimant struggles with comprehension. The seventh grade teacher found no limitation in caring for self.

As I indicated, the form does not define serious. I understand plaintiff's argument that it should be equated with marked, but that position has been rejected by several courts, including *Christina B. versus Commissioner of Social Security*, 2020 WL 5848732, from the Northern District of New York, October 1, 2020; *Nicole A. on behalf of J.D.J.W. versus Commissioner of Social Security*. And in that case it appears at note 2. It is from the Western District of New York, District Judge David G. Larimer, dated March 10, 2021. And also *Spruill v. Astrue,* 2013 WL 885739, from the Western District of New York, March 8, 2013.

I have reviewed the record as a whole, which I'm obligated to do, of course, and I find that substantial evidence supports the Administrative Law Judge's determination. In acquiring and using information, the childhood disability regulations define that as we consider a child's ability to learn information and to think about and use information. With respect to an adolescent, the regulations state, continues to demonstrate learning in academic assignments, applies learning in daily situations

without assistance, comprehends and expresses simple and complex ideas, using increasingly complex language in academic and daily living situations, learns to apply knowledge in practical ways that will help in employment, plan ahead for future activities, and begins realistic occupation and planning.  And, of course, when we are examining whether or not the claimant does have a marked limitation in this domain, it's important to recall that it is the claimant's burden to establish such a limitation.

When you review the record, plaintiff's test scores are low to average.  He is in regular classes with some assistance.  He has passed fifth, six and seven grades, and the teachers' questionnaires suggest academic improvement over time.  I acknowledge, as claimant's attorney has pointed out, that there is one test result from January 2015 in speech and language that reveals that claimant tested out at two standard deviations below mean.  That's at page 433.  But as the Administrative Law Judge noted, that's before the date of plaintiff's application and later testing, and there are specifics in the Administrative Law Judge's decision that show improvement.

In August of 2020 teacher Holmer found only one serious problem.  Dr. Warden examined the claimant, a speech and language -- Dr. Katherine Warden, a psychologist, examined the claimant on January 14, 2016, and the only --

and that appears at page 458 to 462.  The only marked limitation that was found was in the ability to interact adequately with peers.

The Administrative Law Judge's determination is also supported by the State Agency consultant, Dr. Jennifer Meyer, who on January 25, 2016 opined, and this appears at 464 to 466 and also 63 to 71, that claimant experiences less than marked limitation in the relevant domains.

So I find that claimant has not met the burden of showing a marked limitation in this domain, and I find no error in the Administrative Law Judge's consideration of teacher DeLuke's evaluation.

In caring for self, the Administrative Law Judge acknowledged hygiene issues but pointed out that they appear to be resolved.  That discussion appears at pages 20 and 21 of the Administrative Transcript.  And as I indicated, the seventh grade teacher, Alexis Holmer, found no limitations in this area.

The teachers all seem to indicate that claimant is able to follow the rules, use good judgment.  Dr. Warden found no marked limitation in this domain.  Dr. Meyer found no limitation in this domain as well.

I also find that substantial evidence when the record is considered as a whole supports the finding that there is no functional equivalence in this domain as well.

      Simply stated, I am unable to say that no reasonable fact-finder could agree with the Administrative Law Judge's assessment that claimant does not suffer from a marked limitation at either of those two domains.  So I will grant judgment on the pleadings to the defendant and order dismissal of plaintiff's complaint.

      Thank you both.  I hope you have a good afternoon.

      *          *          *

C E R T I F I C A T I O N

    I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                              *Eileen McDonough*
                        _____
                        EILEEN MCDONOUGH, RPR, CRR
                        Federal Official Court Reporter